AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 22-sw-26
In the Matter of the Search of Information Contained on )
Thumb Drive (Serial No. 5VY9MEWZ) Located in )
Evidence Control Room - FBI Washington Field Office )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

located in the _____ District of ____Columbia____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 1001, 1519 52 U.S.C. §§ 30109, 30116, 30121, 30122 | Conspiracy, False Statements, Submission of False Records, Excessive Contributions, Foreign Contributions, and Contributions in the Name of Another |

The application is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent David A. Elias
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means).*

Date: 02/11/2022

*Judge's signature*

City and state: Washington, D.C.          Magistrate Judge Robin M. Meriweather
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 22-sw-26
In the Matter of the Search of Information Contained )
on Thumb Drive (Serial No. 5VY9MEWZ) Located in )
Evidence Control Room - FBI Washington Field Office )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of ____Columbia____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before ____February 14, 2022____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Magistrate Judge Robin M. Meriweather____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  02/11/2022 _____   _____
*Judge's signature*

City and state:  Washington, D.C. _____   Magistrate Judge Robin M. Meriweather
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return |||
|---|---|---|
| Case No.: <br> 22-sw-26 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

### Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                                                                          *Executing officer's signature*

                                                                                                             *Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

One Microsoft Outlook .pst file labeled "rudy," containing approximately 780.225 megabytes of data, that is contained on a thumb drive with serial number 5VY9MEWZ that is currently located at the Evidence Control Room of the Federal Bureau of Investigation's Washington Field Office, 2800 V Street, N.E., Washington, D.C.

## **ATTACHMENT B**

### **Items to Be Seized**

All information that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Sections 371 (Conspiracy), 1001(a)(2) (False Statements), and 1519 (Submission of False Records); and Title 52, United States Code, Sections 30122 and 30109 (Contributions in Name of Another), 30116 and 30109 (Excessive Contributions), and 30121 and 30109 (Foreign Contributions) involving Ahmad "Andy" Khawaja, George Nader, Mohammad Diab, Roy Boulos, Thayne Whipple, Rani El-Saadi, Wael El-Saadi (identified as Co-Conspirator A in the D.C. Indictment), or Rudy Dekermenjian from December 1, 2015, to September 9, 2020, including but not limited to information pertaining to the following matters:

(a) All records or information, including the contents of any and all wire and electronic communications, attachments, stored files, print outs, and header information, that directly or indirectly relates to the charges in the Indictment brought in Case No. 1:19-cr-00374, including any information related to unlawful conduit contributions or unlawful excessive contributions to political committees located in the United States;

(b) Communications involving any individuals identified, either by name or through anonymized reference, in the above-referenced Indictment, including but not limited to George Nader, Ahmad "Andy" Khawaja, Mohammad Diab, Roy Boulos, Thayne Whipple, Rani El-Saadi, and Wael El-Saadi;

(c)   Financial records, billing records, contracts, invoices, and/or payment records related to contracts between Ahmad "Andy" Khawaja and/or Allied Wallet and GS Investments and/or other entities associated with George Nader and/or the UAE;

(d)   Calendar entries, contacts, telephone call logs, images, and other recordings associated with the above-referenced conduct; and

(e)   Evidence of mental state bearing on the crimes charged in the above-referenced Indictment.

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. This warrant further authorizes a review of a copy of the information to be searched that is housed on the Relativity document review platform and which has been subjected to a filter process to avoid exposure by the prosecution team to privileged material.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION CONTAINED ON THUMB DRIVE (SERIAL NO. 5VY9MEWZ) LOCATED IN EVIDENCE CONTROL ROOM – FBI WASHINGTON FIELD OFFICE | Criminal No. 22-sw-26 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David A. Elias, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant to expand the scope of reviewable information associated with records already obtained by the United States. On July 27, 2018, the Honorable Marianne B. Bowler, United States Magistrate Judge in the District Court for the District of Massachusetts, issued a search warrant for an electronic hard drive that was in possession of government investigators in the District of Massachusetts containing two Microsoft .pst[1] files, one named "rudy" and the other named "moe." The July 27, 2018, search warrant authorized the government to seize information from those accounts involving violations of Title 18, United States Code, Sections 371, 1956, and 2. The search warrant was issued in connection with a federal investigation involving Allied Wallet, Inc. ("AW"), a credit card payment processor, and its chief executive officer, Ahmad "Andy" Khawaja, both of whom allegedly aided and abetted illegal online pharmacies and other business engaged in unlawful

---

[1] A personal storage table (*i.e.*, .pst) is a proprietary file format built by Microsoft to store copies of messages, calendar events, and other items within Microsoft platforms, including Microsoft Exchange Client, Windows Messaging, and Microsoft Outlook.

activities to sell products and provide services in the United States while masking their true identities in an effort to thwart detection by law enforcement. The July 27, 2018, search warrant, affidavit, and application are attached to this Affidavit as Exhibit 1 and incorporated for all purposes.

2. The "rudy" and "moe" .pst files were produced to government investigators in the District of Massachusetts by a confidential human source ("CHS") who formerly worked as an Information Technology manager for AW. Prior to leaving AW, in and around March 2017, the CHS on his own initiative obtained a digital copy of AW's email system and saved it on a "Google Drive" account that was owned and maintained solely by him. At some point thereafter, the CHS saved the "rudy" and moe" .pst files on a private server hosted by Amazon. On or about July 23, 2018, the CHS gave authorization to government investigators in the District of Massachusetts to access this private server hosted by Amazon. Government investigators subsequently downloaded and copied onto an electronic hard drive two Microsoft Outlook .pst files: One file named "rudy," containing approximately 780.225 megabytes of data; and the other named "moe," containing approximately 25.89 gigabytes of data. In subsequent discussions with law enforcement personnel, I have learned that the "rudy" .pst file corresponds to emails in the AW account of Rudy Dekermenjian, an attorney who at some point served as in-house legal counsel for AW, and that the "moe" .pst file corresponds to emails in the AW account of Mohammad Diab, who is Khawaja's cousin and at some point served as chief operations officer for AW.

3. Also in subsequent discussions with law enforcement personnel, I learned that a copy of the "rudy" .pst file was sent to filter attorneys employed by the Public Integrity Section of the United States Department of Justice's Criminal Division ("PIN"). The "rudy" .pst file was sent to PIN filter attorneys in a thumb drive with serial number 5VY9MEWZ that is currently

located at the evidence control room of the Federal Bureau of Investigation's Washington Field Office, which is located in the District of Columbia. The data contained on this thumb drive was uploaded to a computer platform called Relativity, which allows users to sort, review, and label electronic files, such as emails. PIN filter attorneys conducted a review of this data in the Relativity database for the purpose of screening attorney-client communications in connection with a criminal prosecution to which I am assigned. Specifically, on November 7, 2019, a grand jury sitting in the District of Columbia indicted Khawaja, Diab, and Dekermenjian (along with five other defendants) on conspiracy, campaign finance, and obstruction charges (hereinafter, "D.C. Indictment").[2] In addition, my understanding is that the Honorable Randolph D. Moss, United States District Court Judge in the District of Columbia, has held hearings with the PIN filter attorneys to resolve attorney-client privilege matters in connection with Case No. 1:19-cr-00374. The D.C. Indictment is attached to this Affidavit as Exhibit 2 and incorporated for all purposes.

4.      As noted, government investigators in the District of Massachusetts obtained a search warrant to seize materials from the "rudy" .pst file that were relevant to that investigation, and filter attorneys at PIN have reviewed the "rudy" .pst file for privilege and discovery in connection with the D.C. Indictment. However, as a Special Agent assigned to the investigation in the District of Columbia, I currently do not have court authorization to review the "rudy" .pst file for evidence related to the D.C. Indictment. Accordingly, your affiant submits this affidavit in support of a warrant to search and seize from the "rudy" .pst file any evidence of crimes related to the D.C. Indictment as described in Attachments A and B. Specifically, based on email documentation provided by Rudy Dekermenjian from his personal account in the course of his

---

[2]     Dekermenjian pled guilty to charges associated with the D.C. Indictment and is cooperating with the government; Diab is scheduled to proceed to trial in the District of Columbia on February 23, 2022; Khawaja is a fugitive of justice and his return to the United States remains uncertain.

3

cooperation with my investigation, I have probable cause to believe that there is evidence of crimes relating to the D.C. Indictment in the "rudy" .pst file. This search warrant application does not request authority to review any records in the "moe" .pst file, which is not in possession of the investigative team assigned to the D.C. Indictment, or to seek any additional records other than those contained in the "rudy" .pst file.

5. Given the extensive filtering that has already been applied to the data from the "rudy" .pst file in the Relativity database, if the Court authorizes this warrant application, the investigative team intends to review any non-privileged data from the "rudy" .pst file in its current form on the Relativity database.

6. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since August 2021. Prior to this date, I worked as a felony prosecutor in Cuyahoga County, Ohio for over four years. As a prosecutor, I investigated and prosecuted violent crime and drug related offenses under state statutes. As a Special Agent, I have investigated violations of federal statutes, including but not limited to public corruption, fraud, and other criminal matters. I currently am assigned to Squad CR-15 of the FBI's Washington Field Office, Northern Virginia Resident Agency, and tasked with investigating allegations of public corruption and fraud. In the course of my duties, I have conducted and participated in numerous investigations. Among other things, I have participated in the execution of arrest and search warrants.

7. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, and knowledge obtained from other individuals. I have reviewed documents and computer records related to this investigation, communicated with others who have

personal knowledge of the events and circumstances described herein, and learned information through my training and experience. I have included in this affidavit facts that I believe are sufficient to support a probable cause finding for the issuance of the requested warrant, but I do not purport to include each and every matter of fact observed or known to me or other law enforcement agents involved in this investigation.

## PROBABLE CAUSE

8. On November 7, 2019, the D.C. Indictment, a fifty-three count indictment, was returned in case number 1:19-cr-00374 (RDM), charging eight defendants—including Dekermenjian, Diab, and Khawaja—with conspiracy to commit offenses against the United States, making conduit contributions, making excessive contributions, causing the submission of false statements, causing the submission of false records, and obstruction of justice.

9. On August 28, 2020, a two-count information was filed against Dekermenjian in the District of Massachusetts, charging Dekermenjian with conspiracy to commit wire fraud affecting a financial institution and bank fraud and alteration and falsification of records. This matter was transferred to the District of Columbia pursuant to Rule 20 of the Federal Rules of Criminal Procedure and is now case number 1:20-cr-00174 (RDM).

10. On September 9, 2020, Dekermenjian pled guilty to Count Thirteen of the D.C. Indictment, charging a violation of Title 18, United States Code, Section 371, and agreed to cooperate with the United States. On the same date, Dekermenjian pled guilty to Counts One and Two of the Information in case number 1:20-cr-00174 (RDM), charging violations of Title 18, United States Code, Sections 1349 and 1519, and agreed to cooperate with the United States.

11. Dekermenjian met with government investigators on three occasions to provide information relating to the D.C. Indictment: July 28, 2020; August 27, 2020; and November 12,

5

2021. Dekermenjian also produced a 221-page PDF file in connection with his cooperation, consisting for the most part of email communications that he had retrieved from his personal Gmail account: rudydeker@gmail.com.

12. Over the course of his three debriefs with the government, Dekermenjian provided information about his and his co-defendants' conduct, including information pertaining to Count One of the D.C. Indictment, which alleged a conspiracy between Khawaja and co-defendant George Nader to funnel funds from the United Arab Emirates into the 2016 U.S. presidential election by way of unlawful campaign contributions. Dekermenjian was not charged in Count One of the D.C. Indictment.

13. Specifically, during the November 12, 2021, debrief with the government, Dekermenjian was shown an email exchange between Khawaja and Diab dated June 14, 2016, which was ultimately forwarded to Dekermenjian. In the first email of the thread, Khawaja sent an email from his personal account, nasakhawaja@yahoo.com, to Diab's AW email account with subject line: "Call me." The body of the email did not contain any text. Shortly thereafter, Diab responded from his AW email account to Khawaja's email, and added Khawaja's AW email account to the response. In the response email, Diab wrote "Check now," and attached a word document titled "Invoice number.docx." Khawaja then forwarded this email to Dekermenjian's AW account. The word document consisted of an invoice from AW to Pearlwood Limited for payment of €10 million in exchange for various licensing services. Dekermenjian confirmed that Pearlwood Limited is an entity affiliated with co-defendant George Nader. A copy of this email exchange is reproduced in full below.

 Gmail                                    Rudy Dekermenjian <rudydeker@gmail.com>

## Fwd: RE: Call me

Andy Khawaja <andyk@alliedwallet.com>                         Tue, Jun 14, 2016 at 2:12 PM
To: Rudy Dekermenjian <rudy@alliedwalletltd.com>

Get Outlook for iOS<https://aka.ms/o0ukef>

---------- Forwarded message ----------
From: "Moe Diab" <moe@alliedwallet.com<mailto:moe@alliedwallet.com>>
Date: Tue, Jun 14, 2016 at 2:07 PM -0700
Subject: RE: Call me
To: "'Andy'" <nasakhawaja@yahoo.com<mailto:nasakhawaja@yahoo.com>>
Cc: "Andy Khawaja" <andyk@alliedwallet.com<mailto:andyk@alliedwallet.com>>

Check now

Best Regards,

Allied Wallet-Risk
[Customer Service] 888-255-1137 | [Direct Phone] 310-424-5495  Ext 5005  | [Mobile] 818-967-7485| [Fax] 480-304-3434|
Confidentiality Disclaimer:  This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential.  If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments.  Thank you.

-----Original Message-----
From: Andy [mailto:nasakhawaja@yahoo.com]
Sent: Tuesday, June 14, 2016 1:00 PM
To: Moe Diab <moe@alliedwallet.com>
Subject: Call me

📎 Invoice number.docx
   29K

7

| | | | | | | |
|---|---|---|---|---|---|---|
| Business name | **Allied**Wallet<br>Allied Wallet LTD.<br>1 Northumberland Avenue, Trafalgar Square, London, WC2N 5BW, United Kingdom | | Invoice number | 317 | | |
| | | | Invoice date | 6/14/2016 | | |
| Business email | billing@alliedwallet.com | | Due date | 50% to be paid within 48 hours and 50% to be paid on August 15, 2016 | | |
| | | | Currency | Euro | | |
| **Bill to** | Pearlwood Limited | | | | | |
| Item name | Description | Quantity | Unit price | Amount | Taxable | |
| Unlimited Scrub settings | 1 year service | 1 | €2,000,000.00 | €2,000,000.00 | | No |
| Unlimited velocity settings | 1 year service | 1 | €2,000,000.00 | €2,000,000.00 | | No |
| Unlimited Gateway use | 1 year service | 1 | €2,000,000.00 | €2,000,000.00 | | No |
| Unlimited Cascade Use | 1 year service | 1 | €2,000,000.00 | €2,000,000.00 | | No |
| Unlimited Blacklist/Whitelist Settings | 1 year service | 1 | €2,000,000.00 | €2,000,000.00 | | No |

14. Dekermenjian further provided the following information about the foregoing email:

   a. Dekermenjian recalled a meeting that Dekermenjian attended in Khawaja's office, during which Khawaja asked Diab to create the above invoice for Nader. Dekermenjian reported that, at this meeting, Khawaja told Diab to

8

    create the invoice for "Gateway Services," which are licensing services, and gave Diab a general description as to what Khawaja wanted in the invoice. Khawaja told Diab to make the invoice for €10 million. Dekermenjian also told government investigators that AW was in no position to provide the licensing services, or "Gateway Services," contemplated in the invoice, and that Diab was uniquely positioned to know that as chief operating officer of AW. Dekermenjian also reported that Diab knew of Nader's political relationship with Khawaja. Therefore, Dekermenjian surmised, Diab knew that the anticipated payments from Nader were not, in fact, in exchange for services but to fund political contributions in the United States.

b. Dekermenjian also recalled being in attendance at a separate meeting in Diab's AW office with Khawaja and Diab. This meeting occurred prior to the June 14, 2016, email exchange discussed in Paragraph 13. During this meeting, Khawaja told Diab that he (Khawaja) would send the invoice to Nader and that the funds he would receive in return would be used to fund Khawaja's political contributions in the United States.

c. Dekermenjian stated that he had emailed the above invoice to Nader on June 15, 2016.

d. Lastly, Dekermenjian explained that, because he was employed as an independent contractor by AW and was not on AW's Outlook system, Dekermenjian set up a Gmail account that received copies of the emails sent to his AW email account (rudy@alliedwalletltd.com). Accordingly, even though the above email was sent to Dekermenjian's AW email account, a

copy of that email was also received by Dekermenjian's personal Gmail account.

15. As charged in Count One of the D.C. Indictment, Khawaja and Nader conspired to funnel more than $3.5 million in unlawful contributions from Nader to political committees in the United States, including in support of a U.S. presidential candidate in the 2016 election. *See* ECF No. 1 ¶ 28. They did so in part by creating a "false licensing agreement and invoice to disguise approximately $4.9 million in payments from NADER to KHAWAJA as a legitimate commercial transaction." *Id.* ¶ 28(d). My investigation has established that, pursuant to this sham invoice, AW received a €2.5 million ($2.77 million) wire transfer on or about July 18, 2016, and another €1.941 million ($2.14 million) wire transfer on or about August 24, 2016, from an entity affiliated with Nader.

16. My investigation also uncovered several contemporaneous WhatsApp messages between Khawaja and Nader in which they discussed the invoice that was created by Diab and sent by Dekermenjian to Nader. For example:

    a. On or about June 14, 2016 (the same day of the email discussed in Paragraph 14), Nader wrote the following to Khawaja: "Hi Andy As per our conversation and agreement for consultation and services provided by your company kindly send me the bill to my email address (Rudy has it) so we can take care of it ASAP! Specify in bill method and full details of payment please. As already mentioned half of 10 to be paid upon receipt and second half by 15 August!" The following day, Khawaja responded, "Invoice was sent last night from Rudy." *Id.* ¶ 29(n).

  b. On or about June 16, 2016, Khawaja followed up with Nader: "Rudy resent you the updates address on the invoice. All good now. Please send the package ASAP. I'm on my way back to la now. Everything is planned and confirmed. This is going to be very large and private events. Will maximize it as much as possible." *Id.* ¶ 29(o).

  c. On or about June 22, 2016, Khawaja wrote, "Hi George, 4 days left for the Sunday event and Still nothing arrived yesterday or today??" To which Nader responded, in part, "The issue has been taken care of and is in order! Nothing more can be done about it! I have also discussed the company issue and will send you a note on the matter as per [senior UAE official] instruction!" On or about June 24, 2016, KHAWAJA continued to complain that the "package" had not arrived. *Id.* ¶ 29(p).

17. As noted, my investigation has established that Nader transferred approximately $4.9 million to Khawaja pursuant to the sham invoice and that Khawaja used these funds to finance political contributions that he and others, including Diab and Dekermenjian, made to various political committees using their own names, even though the funds originated from Nader in the UAE as both Diab and Dekermenjian well knew. This conduct was charged in part in the D.C. Indictment as violations of several criminal statutes, including 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001(a)(2) (false statements), 52 U.S.C. § 30122 and 30109 (contributions in the name of another), 52 U.S.C. § 30116 and 30109 (excessive contributions), and 18 U.S.C. § 1519 (submission of false records).

18. Accordingly, your affiant requests a warrant authorizing the government to seize from the "rudy" .pst file any evidence, fruits, contraband, and instrumentalities of violations of the aforementioned statutes.

Respectfully submitted,

_____
David A. Elias
Special Agent
Federal Bureau of Investigation
U.S. Department of Justice


Subscribed and sworn to before me on _____, 2022


_____
HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE