# EXHIBIT ONE

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 18-MJ-2436-MBB
A hard drive (SN#S251NxOH705157H) that contains two )
email files, one named "rudy" and one named "moe." )
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Massachusetts_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____August 2, 2018_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Marianne B. Bowler, United States Magistrate Judge__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  July 27, 2018 @ 2:25 PM          *[signature]* Marianne B. Bowler USMJ
                                                                        *Judge's signature*

City and state:   Boston, MA                              Marianne B. Bowler, United States Magistrate Judge
                                                                        *Printed name and title*

USA_KDRW_4322262

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: <br> 18-MJ-2436-MBB | Date and time warrant executed: <br> July 27, 2018, 2:25 pm | Copy of warrant and inventory left with: <br> N/A |

Inventory made in the presence of : <br> N/A

Inventory of the property taken and name of any person(s) seized:

- Two Microsoft .pst files, labeled as "rudy" (780.225 MB) and "moe" (25.89 GB).

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: October 27, 2021

*Brian D. Hendricks -S*

Digitally signed by Brian D. Hendricks -S
DN: c=US, o=U.S. Government, ou=HHS, ou=FDA, ou=People, 0.9.2342.19200300.100.1.1=2000360181, cn=Brian D. Hendricks -S
Date: 2021.10.27 11:55:06 -04'00'

*Executing officer's signature*

Brian Hendricks - Special Agent

*Printed name and title*

USA_KDRW_4322263

## ATTACHMENT A

### Description of Equipment to Be Searched

The equipment to be searched consists of the following:

A hard drive (SN#S251NxOH705157H) that contains two email files, one named "rudy" and one named "moe." The equipment is located at a Seized Computer Evidence Recovery Specialist laboratory in Plainville, Massachusetts.

11

USA_KDRW_4322264

## ATTACHMENT B

## Items to Be Seized

I.  All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 18 U.S.C. §§ 1956 (Money Laundering) and 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 2 (Aiding and Abetting), including those related to:

    A.    The following people websites:

        1.    Cheapscrips.com

        2.    Pokerstars.com

        3.    Any websites advertising illegal goods or services, including illegal gambling, sales of controlled substances, and child pornography.

    B.    The following topics:

        1.    Money laundering;

        2.    Illegal enterprises;

    C.    The payment, receipt, transfer, or storage of money or other things of value in a manner designed to conceal the source of illegal funds, including:

        1.    Bank, credit union, investment, money transfer, and other financial accounts;

        2.    Credit and debit card accounts;

        3.    Tax statements and returns;

        4.    Business or personal expenses;

        5.    Income, whether from wages or investments;

        6.    Loans;

    D.    Communications between employees of Allied Wallet and between

USA_KDRW_4322265

        employees of Allied Wallet and others regarding: (1) masking the true identity of individuals or companies involved in financial transactions; or (2.) illegal enterprises

E.    The identity, location, and travel of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above.

F.    Evidence of who used, owned, or controlled the email accounts that contain evidence of the above;

G.    Evidence of malicious computer software that would allow others to control the email accounts that contain evidence, and evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software.

USA_KDRW_4322266

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 18-MJ-2436-MBB
A hard drive (SN#S251NxOH705157H) that contains two )
email files, one named "rudy" and one named "moe." )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A hard drive (SN#S251NxOH705157H) that contains two email files, one named "rudy" and one named "moe."

located in the _____ District of ____Massachusetts____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s 1956 (Money Laundering); 18 U.S.C. s 371 (Conspiracy); 18 U.S.C. s 2 | |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason Simonian, FDA OCI SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  07/27/2018

_____
*Judge's signature*

City and state: Boston, MA    Marianne B. Bowler, United States Magistrate Judge
*Printed name and title*

USA_KDRW_4322261

18- MJ-2436-MBB

## AFFIDAVIT OF SPECIAL AGENT JASON SIMONIAN IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jason Simonian, state:

### Introduction and Agent Background

1. I am a Special Agent (SA) with the United States Food and Drug Administration's Office of Criminal Investigations ("FDA-OCI"), and have been so employed since September of 1996. I was previously employed as a Special Agent of the United States Department of Labor for approximately 7 years. I have been a federal law enforcement officer for over 29-years. I am currently the supervisor of the FDA-OCI Rhode Island task force (hereinafter "task force") which is comprised of investigators from the Drug Enforcement Administration (hereinafter "DEA"), Internal Revenue Service - Criminal Investigations (hereinafter "IRS-CI"), Homeland Security Investigations (hereinafter "HSI"), Postal Inspection Service (hereinafter "PIS"), Rhode Island State Police, Rhode Island National Guard – Counter Drug Unit, and the North Providence, East Providence and Westerly, Rhode Island Police Departments. As an FDA-OCI Special Agent, I primarily conduct investigations into suspected violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, et seq., and other federal statutes enforced by the United States Food and Drug Administration ("FDA").

2. As a Special Agent with FDA - OCI, I am responsible for conducting criminal investigations involving violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, et seq., and other federal statutes enforced by the United States Food and Drug Administration ("FDA"). I have also been trained by the FDA-OCI in those various means and methods by which illegal drug traffickers obtain, possess, transport, divert, and distribute controlled substances and non-controlled prescription drugs. I have also received extensive training on conducting Money Laundering investigations and have served as an Instructor at the

USA_KDRW_4322248

Federal Law Enforcement Training Center (FLETC) where I have taught new OCI Agents a course on how to conduct complex and transnational Money Laundering investigations.

3. I am currently investigating a network of online pharmacies, including one called "cheapscrips.com," for advertising prescription drugs and controlled substances for sale on the internet in violation of several provisions of the United States Food, Drug, and Cosmetic Act ("FDCA") (including 21 U.S.C. §§ 331(a) and 353(b)(1) (Causing a Misbranded Drug to Be Introduced into Interstate Commerce) and 21 U.S.C. § 841(a) (Sale of Controlled Substances)) as well as 18 U.S.C. § 1343 (Wire Fraud). I am also investigating Allied Wallet, a credit card payment processor that works with cheapsrips.com, as well as the CEO and founder of Allied Wallet, Ahmed ("Andy") Khawaja, for money laundering and for conspiring and aiding and abetting illegal online pharmacies and other businesses engaged in unlawful activities in violation of 18 U.S.C. § 1956 (Money Laundering) and 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 2 (Aiding and Abetting).

4. This affidavit is being submitted in support of an application for a warrant to search electronic equipment, specifically a hard drive (SN#S251NxOH705157H) that contains two email files, one named "rudy" and one named "moe." ("the equipment") that is in the possession of law enforcement investigators, as described in Attachment A. There is probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of the crimes listed above, as described in Attachment B.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

2

**Probable Cause to Believe That a Federal Crime Was Committed**

6. On approximately January 31, 2017, Food and Drug Administration Office of Criminal Investigations ("OCI") Special Agent Brian Hendricks made an undercover purchase of prescription drugs and controlled substances being sold illegally on the website www.cheapscrips.com for a total of $328.00. This purchase was paid for using an undercover credit card while SA Hendricks was in Massachusetts. A notice on the website indicated that the charge to the credit card would appear under the name "Skin Beauty" as opposed to "cheapscrips."

7. The credit card statement for this transaction showed that the payment was processed on February 1, 2017, and the identified merchant was "ALW*skinnbeauty8552781810UK." The issuer of the credit card used for the purchase identified the payment processor as Allied Wallet Ltd. ("Allied Wallet"). A "payment processor" processes debit and credit card transactions from merchants. It does this by connecting the merchant account (also known as a MID—short for Merchant ID) with the credit card network for authorization from the issuing bank.

8. On March 10, 2017, SA Hendricks sought records from Allied Wallet regarding the identity of the customer whom the undercover purchase was made on behalf of, along with any additional supporting customer documents.

9. Allied Wallet provided records which identified Beauty Skinn Ltd of Watford, England as the client company for whom they processed the undercover purchase. Lindsey Williams was identified as the person who opened the account with Allied Wallet on behalf of Beauty Skinn Ltd.

10. I have since reviewed the Allied Wallet website: www.alliedwallet.com. The website indicates that Allied Wallet provides, "A Complete E-Commerce Experience." The website further advises that, "Allied Wallet has created several fully customizable international payment solutions for businesses of varying scales. The majority of your customers will opt to make payment with

3

USA_KDRW_4322250

their credit cards while some may prefer to use one of the many alternative payment options we support. Regardless of how they choose to pay, we have the right solution for you so that you can accept payments online."

11. The website lists Andy Khawaja as the company Founder and CEO. Allied Wallet was founded in 2002 and maintains its principal offices in London, England (1 Northumberland Avenue Trafalgar Square London, WC2N 5BW) and Los Angeles, California (9000 Sunset Blvd, West Hollywood, CA 90069).

12. In July of 2018, I, and other members of the investigative team, made contact with a Confidential Source ("CS") who was a former employee of Allied Wallet. Specifically, the CS was employed as an "IT Manager" at Allied Wallet from approximately August 2015 through June 2017. As detailed below, the CS obtained, prior to his leaving the employ of Allied Wallet, a digital copy of email files maintained on the Allied Wallet server. These email files are the ones now downloaded onto the equipment that is the subject of this search warrant application. The CS was interviewed by me and other members of the investigative team and provided the below information.

13. The CS has twenty years experience in the technology field. During his tenure with Allied Wallet, the CS was primarily responsible for ensuring the company's credit card processing system did not get compromised and addressing any security breaches to the processing system. The CS was also responsible for ensuring Allied Wallet was in compliance with Payment Card Industries (PCI) standards. The Payment Card Industry Data Security Standard (PCI DSS) is an information security standard for organizations that handle branded credit cards from the major card schemes. The PCI Standard is mandated by the card brands and administered by the Payment Card Industry Security Standards Council. The standard was created to increase controls around

4

cardholder data to reduce credit card fraud).

14.     During the CS' employment with Allied Wallet, the CS became embroiled in a sexual harassment suit brought by a female employee of the company. The CS agreed to serve as a witness for her. According to the CS, he was then "targeted" by the company which, according to the CS, began to retaliate against him. As a result the CS brought his own lawsuit against Allied Wallet

15.     Contemporaneously, Allied Wallet was in the process of migrating the company's email system to "Microsoft365." As part of his duties as IT Manager, the CS made an copy of the contents of the server during the migration process (i.e., he "backed-up" the server). According to the CS, he also decided to personally retain a copy of the email files being moved. The CS explained that he did so in case there came a point where the contents of the emails could potentially be used in the CS' suite against Allied Wallet. As such, in approximately March of 2017, the CS transferred the contents of the email file to a "Google Drive" account maintained by and solely under the control of the CS.

16.     At some point subsequent to the transfer of the data to the CS' Google Drive account, the CS was contacted by an investigative journalist, who advised the CS that he had obtained the CS' contact information from the female employee who was bringing the sexual harassment suit against Allied Wallet.

17.     In the course of their conversations, the journalist informed the CS that he was in the process of writing an article about the significant political donations made by Ahmad (Andy) Khawaja, the CEO and founder of Allied Wallet. The CS informed the journalist that he had Allied Wallet emails, and offered the emails to the journalist for review. He then provided the journalist with access to the email files.

18.     After reviewing the emails, the journalist informed the CS that the files contained a

5

significant amount of emails that indicated Allied Wallet was complicit in knowingly processing the payments of illegal enterprises, to include entities engaged in gambling, pornography and drug sales. The journalist further advised the CS that he would be expanding the scope of his investigative piece to include the scope of activity detailed in the emails provided by the CS.

19.     The CS has advised that, although he has personally not reviewed the emails (according the CS, he and his attorney reached a settlement with Allied Wallet concerning the lawsuit brought by the CS, thus eliminating the CS's interest in reviewing the emails) the CS was "not surprised" at the journalist's finding.

20.     According to the CS, during the normal course of his interactions with other employees at Allied Wallet and his own observations, the CS had come to believe that Allied Wallet was engaged in the processing of payments for illicit enterprises.  By way of example, the CS explained that he was aware that Allied Wallet processed significant monetary payments for a large number of purported "help desk" accounts conducting business out of India. According to the CS, due to the nature and function of a "help desk," such an operation should not have a need to process significant amounts of payments. The CS advised he concluded that the "help desk" accounts were "front" companies for illicit operations, utilized to simply mask the real source of whatever illicit product was being sold on another, affiliated, website. Further, the CS explained that he believed that some websites engaged in illegal activity would utilize a seemingly unassociated website to accept payments. Based on his conversations with other employees at Allied Wallet, including members of the salesforce, it was well known that the company processed payments for illicit enterprises. Moreover, the CS informed that such enterprises had "no choice" but to engage the services of Allied Wallet because Allied Wallet was the only payment processor who would conduct business with merchants engaged in illegal activity.

USA_KDRW_4322253

21.     I know from my training and experience that websites engaged in unlawful activities will attempt to mask their identity in an effort to thwart law enforcement. The undercover purchase from cheapscripts.com, which was identified on the credit card statements under the company name "skinbeauty," is an example of such masking. Thus, there is direct evidence to corroborate the CS's conclusion that Allied Wallet processed payments for websites engaged in illegal activity.

### Probable Cause to Believe That The Equipment Contains Evidence, Fruits, And Instrumentalities

22.     On approximately July 23, 2018, the CS provided agents of the task force with access to the email files he had obtained from Allied Wallet in March of 2017. Specifically, on that date, OCI Special Agent Donald Henrique, a Seized Computer Evidence Recovery Specialist (SCERS), contacted the CS via telephone. The CS advised he had two Microsoft Outlook .pst backup files located on a server being hosted by Amazon. On the same day, SA Henrique accessed the Amazon server and located the Microsoft Outlook .pst files, one file named "rudy" (780.225 MB) and a second file named "moe" (25.89 GB). SA Henrique downloaded the files directly to 1 to OCI evidence drive SN# S251Nx0H705157H (the equipment)

23.     With regard to the data in these files: (a) the data was originally acquired by the CS in March of 2017, some sixteen months before the identity of the CS first became known to law enforcement; (b) subsequent to the CS obtaining the data, it was initially placed on a "Google Drive" account maintained and controlled by the CS alone; (c) in the last several weeks the CS transferred the data, without assistance, to a server maintained by Amazon, under the exclusive control of the CS; (d) at no time did the government direct the CS to acquire any data whatsoever, to include the email data on the Amazon server; (e) at no time has anyone involved in this investigation ever directed the CS to take any additional steps to acquire any materials from Allied

7

Wallet.

24.     Your affiant is aware that the federal government has taken previous enforcement action against Allied Wallet in relation to that companies processing of payments related to an illegal enterprise. Specifically, your affiant is aware that in 2010, two payment processors – Allied Wallet, Inc. and Allied Systems, Inc. – and their owner – Ahmad Khawaja – entered into a settlement agreement requiring them to forfeit $13,335,248.91 to resolve civil forfeiture claims alleging that the funds were property involved in money laundering. The civil forfeiture complaint filed in Manhattan federal court (Case 1:10-cv-06169-VM) also alleged that the funds were traceable to proceeds of the operation of an illegal gambling business and traceable to property used to operate an illegal gambling business.

25.     According to the complaint and the Stipulation and Order of Settlement, between January 2009 and May 2009, more than $13,335,248.91 in funds traceable to Pokerstars, an online gambling company based in the Isle of Man, and other offshore online gambling companies were deposited in a bank account at Goldwater Bank held by Allied Wallet. These funds were traceable to several sources. Some of the funds were traceable to wire transfers from outside the United States by individuals and entities who knew that (a) the funds involved represented the proceeds of the illegal transmission of gambling information and the operation of an illegal gambling business, (b) the transfers were made in order to promote the carrying on of an illegal gambling business, and (c) the transfers were designed in part to conceal or disguise the nature, location, source, ownership and control of the proceeds of the illegal transmission of gambling information and operation of an illegal gambling business.   Other funds were debited from the bank accounts of online gamblers who were using the Pokerstars.com website, and other websites, to engage in online gambling.

USA_KDRW_4322255

26. Some of the funds deposited in the Goldwater Bank account were transferred, directly or indirectly, into seven different bank accounts held, or otherwise controlled, by Allied Wallet, Allied Systems, and Khawaja. Other funds were credited to the bank accounts of online gamblers, often as winnings from their online gambling.

27. In June 2009, United States Magistrate Judges in the Southern District of New York, based upon sworn affidavits submitted by a Special Agent of the FBI, found that there was probable cause to believe that the funds on deposit in the eight bank accounts controlled by Allied Wallet, Allied Systems, and Khawaja were subject to seizure and civil forfeiture. Based upon these findings, they issued seizure warrants for all funds in these accounts. The FBI seized the funds in these accounts, including the $13,335,248.91 that Allied Wallet, Allied Systems, and Khawaja have agreed to forfeit.

28. The CS has advised your affiant that the case described above was common knowledge to the employees at Allied Wallet. The CS concluded that Allied Wallet has utilized what it learned during the course of the matter to better mask the processing of payments of similarly illicit operations.

### Investigators' Possession of the Equipment

29. The computer equipment is currently in the possession of the Food and Drug Administration Office of Criminal Investigations, and is being stored at its facilities, as described in Attachment A. Investigators obtained the data on the equipment by consent, in the manner described above.

30. Therefore, while the investigators might already have all necessary authority to examine the computer equipment, I seek this additional warrant out of an abundance of caution to be certain that its search will comply with the Fourth Amendment and other applicable laws.

USA_KDRW_4322256

31. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

## CONCLUSION

32. Based on the information described above, I have probable cause to believe that one or more individuals at Allied Bank, including Ahmed ("Andy") Khawaja has violated 18 U.S.C. §§ 18 U.S.C. § 1956 (Money Laundering) and 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 2 (Aiding and Abetting).

33. Based on the information described above, I also have probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the equipment described in Attachment A.

Sworn to under the pains and penalties of perjury,

*[signature]*
Jason Simonian
Special Agent, FDA OCI

Subscribed and sworn to before me on July 27, 2018

*[signature]* Marianne B. Bowler, USMJ
Marianne B. Bowler
United States Magistrate Judge

10

USA_KDRW_4322257

## ATTACHMENT A

### Description of Equipment to Be Searched

The equipment to be searched consists of the following:

A hard drive (SN#S251NxOH705157H) that contains two email files, one named "rudy" and one named "moe." The equipment is located at a Seized Computer Evidence Recovery Specialist laboratory in Plainville, Massachusetts.

USA_KDRW_4322258

## ATTACHMENT B

### Items to Be Seized

I.  All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 18 U.S.C. §§ 1956 (Money Laundering) and 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 2 (Aiding and Abetting), including those related to:

    A.    The following people websites:

        1.    Cheapscrips.com

        2.    Pokerstars.com

        3.    Any websites advertising illegal goods or services, including illegal gambling, sales of controlled substances, and child pornography.

    B.    The following topics:

        1.    Money laundering;

        2.    Illegal enterprises;

    C.    The payment, receipt, transfer, or storage of money or other things of value in a manner designed to conceal the source of illegal funds, including:

        1.    Bank, credit union, investment, money transfer, and other financial accounts;

        2.    Credit and debit card accounts;

        3.    Tax statements and returns;

        4.    Business or personal expenses;

        5.    Income, whether from wages or investments;

        6.    Loans;

    D.    Communications between employees of Allied Wallet and between

USA_KDRW_4322259

employees of Allied Wallet and others regarding: (1) masking the true identity of individuals or companies involved in financial transactions; or (2.) illegal enterprises

E. The identity, location, and travel of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above.

F. Evidence of who used, owned, or controlled the email accounts that contain evidence of the above;

G. Evidence of malicious computer software that would allow others to control the email accounts that contain evidence, and evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software.

USA_KDRW_4322260