# EXHIBIT TWO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 7, 2019**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.** |
| | : | |
| **v.** | : | **INDICTMENT** |
| | : | |
| **AHMAD "ANDY" KHAWAJA,** | : | **Counts 1 and 13: 18 U.S.C. § 371** |
| **GEORGE NADER,** | : | **(Conspiracy)** |
| **ROY BOULOS,** | : | |
| **RUDY DEKERMENJIAN,** | : | **Counts 2, 15-20, 25, 27, 30, 33, 36, 38, 41,** |
| **MOHAMMAD "MOE" DIAB,** | : | **and 44: 52 U.S.C. §§ 30122 and 30109** |
| **RANI EL-SAADI,** | : | **(Contributions in the Name of Another)** |
| **STEVAN HILL, and** | : | |
| **THAYNE WHIPPLE,** | : | **Counts 3, 5, 7, 9, 11, 21, 23, 28, 31, 34, 39,** |
| | : | **42, 45, and 47: 18 U.S.C. §§ 1001(a)(2) and** |
| **Defendants.** | : | **2** |
| | : | **(False Statements)** |
| | : | |
| | : | **Counts 4, 6, 8, 10, 12, 22, 24, 29, 32, 35, 40,** |
| | : | **43, 46, and 48: 18 U.S.C. §§ 1519 and 2** |
| | : | **(Destruction, alteration, or falsification of** |
| | : | **records)** |
| | : | |
| | : | **Counts 14, 26, and 37: 52 U.S.C. §§ 30116** |
| | : | **and 30109** |
| | : | **(Excessive Contributions)** |
| | : | |
| | : | **Counts 49-53: 18 U.S.C. § 1503** |
| | : | **(Obstruction)** |

# INDICTMENT

The Grand Jury charges that:

1.  At all times relevant to this indictment:

## Introduction

2.  Defendant Ahmad "Andy" KHAWAJA was a resident of Los Angeles, California, and the Chief Executive Officer of an online payment processing company headquartered in West Hollywood, California ("Company A").

3.  Defendant George NADER was the owner of a business entity in Foreign Country A ("Company B"), and a self-described advisor to certain foreign governments in the Middle East, including Foreign Country A.

4.  Defendant Roy BOULOS was a resident of Las Vegas, Nevada, and the owner of a liquor, wine, and cigar store in the Las Vegas-area.

5.  Defendant Rudy DEKERMENJIAN was a resident of Glendale, California, an attorney in the Los Angeles-area, and an attorney for Company A.

6.  Defendant Mohammad "Moe" DIAB was a resident of Glendale, California, the cousin of KHAWAJA, and the Chief Operating Officer of Company A.

7.  Defendant Rani EL-SAADI was the owner of travel services provider located in Los Angeles, California.

8.  Defendant Stevan HILL was a resident of Santa Monica, California, and an associate of KHAWAJA, who became a Managing Director at Company A in or about 2017.

9.  Defendant Thayne WHIPPLE was a resident of Ojai, California, and was an outside contractor for Company A.

2

10. Candidate 1 was a candidate for the Office of the President of the United States in the 2016 election. In addition to his/her official campaign committee, Candidate 1 had two joint fundraising committees ("Political Committee 1" and "Political Committee 2") supporting his/her candidacy in 2016. Both committees were registered with the Federal Election Commission and subject to specified contribution limits, limiting the allowable contributions by individuals in the 2016 election cycle. Individual 1 was Candidate 1's spouse.

11. Candidate 2 was a candidate for the Office of the President of the United States in the 2016 election.

12. Elected Official 1 was an elected, federal official.

13. Elected Official 2 was an elected, federal official.

14. Political Committee 3 was a political committee formed to raise money for a national political party's national convention in 2016. It was registered with the Federal Election Commission.

15. Political Committee 4 was a super-political action committee or "super PAC" registered with the Federal Election Commission.

16. Political Committee 5 was the governing body for a national political party. It was registered with the Federal Election Commission as a national political party committee and subject to specified contribution limits, limiting the allowable contributions by individuals in 2016.

17. Political Committee 6 was the governing body for a national political party. It was registered with the Federal Election Commission as a national political party committee and subject to specified contribution limits, limiting the allowable contributions by individuals in 2017.

18.     Political Committee 7 was national political party committee registered with the Federal Election Commission and subject to specified contribution limits, limiting the allowable contributions by individuals in 2018.

19.     Political Committee 8 was a joint fundraising committee registered with the Federal Election Commission.

20.     The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, *et seq.* ("Election Act"), limited financial influence in the election of candidates for federal office, including the office of the President of the United States, and provided for public disclosure of the financing of federal election campaigns, as follows:

     a.  The Election Act limited the amount and source of money that may be contributed to a federal candidate or that candidate's authorized campaign committee and political committees established and maintained by a national political party.

     b.  The Election Act expressly states that contributions made through an intermediary are treated as contributions from the original payor.

21.     The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to compile and publicly report accurate information about the source and amounts of contributions. The Election Act required committees to file campaign finance reports accurately disclosing activity related to contributions, expenditures, debts, and loans of the committee.

**COUNT ONE**
**18 U.S.C. § 371**
**(Conspiracy to Make Conduit Contributions, Cause False Statements, and Cause False Entries in Records)**

22.     Paragraphs 1 through 21 are realleged and incorporated herein by reference.

4

23.     From in or about March 2016 through in or about January 2017, in the District of
Columbia and elsewhere, the defendants,

**AHMAD "ANDY" KHAWAJA, and
GEORGE NADER,**

knowingly conspired and agreed together and with each other, and with other persons both
known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.  willfully making contributions in the name of another person and permitting
    one's name to be used to effect such contributions, and causing another to
    accept contributions made by one person in the name of another person, which
    contributions aggregated $25,000 and more in calendar year 2016, in violation
    of 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30122, and 18 U.S.C. § 2;

b.  willfully causing the submission of material false, fictitious, and fraudulent
    statements and representations in a matter within the jurisdiction of the
    executive branch of the government of the United States, in violation of 18
    U.S.C. §§ 1001(a)(2) and 2; and

c.  with the intent to impede, obstruct, and influence, and in relation to and
    contemplation of, the investigation and proper administration of matters
    within the jurisdiction of departments and agencies of the United States,
    knowingly causing the concealment, covering up, falsifying, and making of
    false entries in records, documents, and tangible objects, in violation of 18
    U.S.C. §§ 1519 and 2.

### PURPOSES OF THE CONSPIRACY

24.     It was a purpose of the conspiracy to facilitate unlawful campaign contributions
from NADER, through KHAWAJA, to political committees, including Political Committee 1,

5

Political Committee 2, Political Committee 3, and Political Committee 4, in order for

KHAWAJA and NADER to gain access to and influence with Candidate 1 and others during and

following the 2016 U.S. Presidential election.

      25.    It was a purpose of the conspiracy for NADER and KHAWAJA to use their

access to Candidate 1 to gain favor with, and potential financial support from, the government of

Foreign Country A.

      26.    It was a purpose of the conspiracy to cause Political Committee 1, Political

Committee 2, Political Committee 3, and Political Committee 4 to unwittingly file false

campaign finance reports concealing these unlawful campaign contributions from the FEC and

the public by falsely stating that the contributions were made by KHAWAJA and Company A

when in reality they were funded by NADER.

      27.    It was a purpose of the conspiracy to conceal the co-conspirators' unlawful

activity.

## MANNER AND MEANS

      28.    The manner and means of the conspiracy included, but were not limited to, the

following:

    a.   The conspirators caused more than $3.5 million in contributions to Political

        Committee 1, Political Committee 2, Political Committee 3, and Political

        Committee 4, all funded with monies funneled by NADER to KHAWAJA for

        contribution;

    b.   The conspirators made the millions of dollars in contributions to access—and,

        at times, to host—political events in an effort to gain influence with high-level

        political figures, including Candidate 1;

c. The conspirators concealed their scheme by surreptitiously communicating about the funneling of monies from NADER to KHAWAJA, as well as their attendance at and hosting of political events, through the use of an encrypted messaging system and coded language;

d. The conspirators created a false licensing agreement and invoice to disguise approximately $4.9 million in payments from NADER to KHAWAJA as a legitimate commercial transaction; and

e. The conspirators caused Political Committee 1, Political Committee 2, Political Committee 3, and Political Committee 4 to submit reports to the FEC unwittingly stating falsely that the contributions were made by KHAWAJA and Company A.

## OVERT ACTS

29. In furtherance of the conspiracy, and to accomplish its purpose, the defendants,

**AHMAD "ANDY" KHAWAJA, and
GEORGE NADER,**

and others known and unknown to the Grand Jury, committed, and caused to be committed, in the District of Columbia, and elsewhere, the following overt acts:

### Initial Communications About NADER Sending Money for Contribution

a. On or about April 16, 2016, KHAWAJA, DEKERMENJIAN, and NADER attended an event in support of Candidate 1. In March and April 2016, KHAWAJA had contributed at least $275,000 to Political Committee 2, and he brought NADER as his guest to the event. Following the event, on or about April 17, NADER reported to an official from Foreign Country A's

7

government via WhatsApp message that he had a "Wonderful meeting with the Big Lady . . . Can't wait to tell you all about it."

b.  On or about May 6, NADER attended an event at KHAWAJA's home with an official from Candidate 1's campaign and another high-profile elected official. On or about May 7, NADER reported to an official from Foreign Country A's government via WhatsApp message that he, "Had a magnificent sessions with Big Lady's key people. . . .  You will be most amazed by my progress on that side!"

c.  On or about May 15, KHAWAJA sent NADER a WhatsApp message about arranging a private event with Candidate 1, stating:  "The birthday party has been set up.  3 party have been arranged for my sister and it's going to be huge for her.  She is very excited and happy.  All arranged buddy :)  as you will see I'm a man of my word."  In these messages, "sister" is a reference to Candidate 1.

d.  On or about May 22, NADER sent KHAWAJA a WhatsApp message about money he was planning to send to KHAWAJA for contribution in support of Candidate 1, stating:  "I am following up with my people on making sure the goodies arrive later this week in time for the Party!  That is for sure and I shall definitely be with you early next month in preparation and celebration !"  On or about May 31, NADER wrote, "Package was authorized and sent! Expected sometimes this week !  Are we still on for first party on June 6?" KHAWAJA responded, "Yes we are on for the 6th."

e.  On or about June 2, KHAWAJA met with an official from Candidate 1's campaign and, in an effort to ingratiate himself with the campaign, promised to contribute $1 million.

f.  In early June 2016, KHAWAJA and NADER continued to communicate via WhatsApp about the status of the money NADER promised to send.  On or about June 2, KHAWAJA wrote, "Hi George the package still did not arrive." NADER responded, "Not to worry my Dear.  Consider it done."  On or about June 3, KHAWAJA wrote, "George my people tell me the delivery still did not arrive ..  Was suppose to arrive yesterday.."  NADER responded:  "I know!  I repeat don't worry about it!  It is done!  Just had to come on certain truck and delivery that is taken couple extra days for delicacy and since it is very fragile!  So consider it done and it will be there in next couple of days or so!  It has to be handled very very carefully!  I explain when I see you in person soon!"

g.  On or about June 2, NADER reported to an official from Foreign Country A's government via WhatsApp message that he was "leaving very early morning to catch up with big Lady over the weekend. . . .  Can I come over for 10 minutes . . . to get your blessings and instruction before I leave please?"

h.  On or about June 6, KHAWAJA attended an event in support of Candidate 1. On or about June 7, KHAWAJA wrote a check for $250,000 to Political Committee 2, falsely representing that it was a contribution from him and his wife, when it was, in fact, made with the expectation that it would reimbursed in full by monies to be funneled to him by NADER.  This caused Political

Committee 2 to unwittingly file a false report with the FEC stating that the
contribution was from KHAWAJA and his wife, when it was not.

i.  On or about June 7, NADER reported to an official from Foreign Country A's
government via WhatsApp message that he, "Had a terrific meeting with my
Big Sister H  You will be most delighted!"

j.  On or about June 10, KHAWAJA again informed NADER via WhatsApp
message that the "package" had not arrived.

### KHAWAJA Seeks Funds for Private Event, and the Conspirators Create a Fake Commercial Transaction to Disguise the Transfer

k.  KHAWAJA arranged to host a private fundraiser at his home on June 26, for
Candidate 1 featuring Individual 1.  In order to host the event, KHAWAJA
was required to contribute or raise $1 million for Political Committee 1 and
Political Committee 2.

l.  On or about June 11, KHAWAJA told NADER in a WhatsApp message about
the June 26 event, and stated that there would be an event on June 28 with
Candidate 1.

m.  On or about June 13, KHAWAJA complained in a WhatsApp message to
NADER, "no package arrived today either."  NADER responded, "I told them
about the upcoming deadline and events and they assure me that it will be
over there in coming days! . . . . It will be over there in time for the 26th
event!  That is all!"  KHAWAJA responded, "Just make sure you guys don't
look bad buddy .. I did not part and more.  It's all up in your hands now."
NADER responded:  "Good!  I am sure you can take care of it till the package
arrive!  No way I can press them anymore!  You have to understand that will

10

backfire if I push anymore!  It will be there!  I have seeing the approval of the first package!  I am not worry about it at all I hope you deliver as promised!"

n.  On or about June 14, KHAWAJA and NADER discussed via WhatsApp a false invoice to disguise the payments from NADER as a legitimate commercial transaction.  NADER wrote:  "Hi Andy  As per our conversation and agreement for consultation and services provided by your company kindly send me the bill to my email address (Rudy has it) so we can take care of it ASAP!  Specify in bill method and full details of payment please.  As already mentioned half of 10 to be paid upon receipt and second half by 15 August!"  On or about June 15, DEKERMENJIAN sent NADER an email attaching an invoice from Company A for €10 million for a supposed license of Company A's software by one of NADER's companies.  On or about June 15, KHAWAJA confirmed, "Invoice was sent last night from Rudy."

o.  On or about June 16, KHAWAJA wrote in a WhatsApp message, "Rudy resent you the updates address on the invoice.  All good now.  Please send the package ASAP.  I'm on my way back to la now.  Everything is planned and confirmed.  This is going to be very large and private events.  Will maximize it as much as possible."

p.  On or about June 22, KHAWAJA wrote, "Hi George, 4 days left for the Sunday event and Still nothing arrived yesterday or today??"  NADER responded, in part, "The issue has been taken care of and is in order!  Nothing more can be done about it!  I have also discussed the company issue and will

11

send you a note on the matter as per HH instruction!"  On or about June 24, KHAWAJA continued to complain that the "package" had not arrived.

q.  On or about June 24, NADER reported to an official from Foreign Country A's government via WhatsApp message that he was "traveling on Sat morning to catch up with our Big Sister and her husband: I am seeing him on Sunday and her in Tuesday Sir!  Would love to see you tomorrow at your convenience . . . for your guidance, instruction and blessing!"

r.  On or about June 26, KHAWAJA hosted a fundraiser at his home for Candidate 1, which featured Individual 1.  KHAWAJA, NADER, DEKERMENJIAN, and other guests invited by KHAWAJA attended.

s.  On or about June 27, NADER reported to an official from Foreign Country A's government via WhatsApp message, "Meeting with [Individual 1] was superb!"  On or about June 29, NADER reported to an official from Foreign Country A's government via WhatsApp message, "Meeting with Big Lady went extremely well."

t.  KHAWAJA contributed almost $1 million in connection with the June 26 event, including $400,800 to Political Committee 1 and $407,000 to Political Committee 2.  At the time, this represented the maximum contributions that could be made under KHAWAJA and his wife's names to Political Committee 1 and Political Committee 2.

u.  As part of the contributions in connection with the June 26 event, on or about June 28, KHAWAJA wrote a $157,000 check to Political Committee 2, falsely representing that it was a contribution from his wife, when it was, in

fact, made with the expectation that it would reimbursed in full by monies to be funneled to him by NADER.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from KHAWAJA's wife, when it was not.

v.  Also as part of the contributions in connection with the June 26 event, on or about July 1, KHAWAJA wrote a $400,800 check to Political Committee 1, falsely representing that it was a contribution from him and his wife, when it was, in fact, made with the expectation that it would reimbursed in full by monies to be funneled to him by NADER.  This caused Political Committee 1 to unwittingly file a false report with the FEC stating that the contribution was from KHAWAJA and his wife, when it was not.

**KHAWAJA Seeks Reimbursement and NADER Seeks Additional Private Events**

w.  In early July 2016, KHAWAJA and NADER continued to communicate via WhatsApp about the status of the money from NADER.  On or about July 1, KHAWAJA complained that the "delivery" had not arrived; NADER responded, "I shall pursue it vigorously!"  On or about July 3 and 4, KHAWAJA again complained that there had been no "delivery."  On or about July 6, NADER asked:  "Do you have anybody here you can trust so I can either hand him over or pass on the partial Baklava gift that is at least good and enough for the upcoming dinner with our Sister?  Since it will be easier and fresh and he can pass it on to you! . . . .  otherwise I will have to transfer it directly from me to your address you gave me!  What you recommend?

13

Friends prefer that comes from me directly to you !"  KHAWAJA responded,
"Send me the gift to me by mail.  I have no one I can trust over there."

x.   On or about July 7, 11, and 12, KHAWAJA again complained via WhatsApp
messages that no "delivery" had arrived.  NADER asked, "When exactly is
the private event at the house with only 3 people please?"  KHAWAJA
responded, "July 29," and NADER stated:  "Very well:  I will make sure you
get a nice tray of Baklava before that date."

y.   Between July 13 and 15, NADER and DEKERMENJIAN engaged in further
communications about the false invoice between Company A and Company
B.  The final invoice provided for half of the invoice to be paid within 48
hours and half by August 15, 2016.  The invoice falsely purports to be for a
one-year license for Company A's software to Company B.  No transfer of
software ever occurred.

z.   On or about July 14, 2016, KHAWAJA caused Company A to write a
$550,000 check to Political Committee 3 to purchase box seats to a political
party's national convention.  This check falsely represented that it was a
contribution from Company A, when it was, in fact, made with the
expectation that it would reimbursed in full by monies to be funneled to
KHAWAJA by NADER.  This caused the Political Committee 3 to
unwittingly file a false report with the FEC stating that the contribution was
from Company A, when it was not.

aa.  According to a WhatsApp message between NADER and one of his
associates, NADER considered attending the political party's national

14

convention.  NADER wrote,  "I have a dilemma: invited to attend the []
convention next week with Andy as a VIP guest where I meet all the major
principles!  On 29/30 July invited to a very small dinner with the Lady:  just 5
people altogether![Foreign Country A Official] cautious and not terribly
excited about the big event.  He thinks I am better of with the smaller private
one but the convention you are too exposed!"  NADER did not attend the
event.

bb. On or about July 14, NADER stated in a WhatsApp message to KHAWAJA:
"Fresh hand made Baklava on the way designed especially for that private
event at your house later this month!  First tray on the way! . . .  You have got
to lose some weight for the upcoming tray of Baklava next week.  Once you
taste it and you like the choices more on the way soon."  On or about July 18,
KHAWAJA confirmed, "Small baklava arrived.  2.7 pieces arrive this
morning."  On or about July 18, Company A received a €2.5 million wire
transfer from Company B.

cc. On or about July 19, NADER sent an official from Foreign Country A's
government via WhatsApp message photos of himself with Individual 1 in
KHAWAJA's home.  On or about July 27, NADER reported to an official
from Foreign Country A's government via WhatsApp message that he was
"catching up with key figures in both camps and have been developing a
steady, consistent and constructive relationship with both camps!"

dd. On or about July 31, KHAWAJA sent NADER a WhatsApp message stating,
"That's why we need birthday gift, If [Candidate 2] gets elected its over for

the Arabs." NADER responded, "Let us hope we put a good one in next couple of weeks and to follow up fast and immediate with a new tray of Cookies!" KHAWAJA responded, "Agree….. I did a lot from me already."

ee. KHAWAJA continued to pursue a private event with Candidate 1. On or about August 2, KHAWAJA wrote in a WhatsApp message, "All set.. It's going to be the 23ʳᵈ at 11am my house 3 people only you me and my wife and Juju :) will be up to 2 hours breakfast. . . .  and then at 1pm we go for lunch with her at [] the actor .. It's at his house up the from my me. It will be larger crowd :) so private breakfast then a lunch with others." Approximately one hour later, however, KHAWAJA wrote, "Was too hard to get it set up. Too small of birthday gift and the time is worth 5 times more they say .." NADER wrote on the same date: "As a show of appreciation, respect and total confidence in You body, and for having set up the private event with Only you, wife, Juju  and me Only, I will press the bakery to prepare me another tray of Baklawa to arrive in time for that event! I will do my best to get something in time! Don't know how big since the second tray was prepared immediately after the Birthday party but I trust my Friend that I can arrange a bit more Baklawa, especially so that I know Juju loves it." KHAWAJA responded, "Please do and it will make us all look good if you know what I mean."

ff. On or about August 4, NADER sent KHAWAJA a WhatsApp message stating he had met with "HH," "And as soon as we get back to [a foreign city]

prepare something with bakery for the upcoming event . . . With pleasure and stressed important and unique role you are playing."

gg. In further messages, KHAWAJA encouraged NADER to ensure the "baklawa" arrived before the 22nd.  On or about August 21, NADER wrote, "A package of Baklava was prepared today as promised and sent DHL  It should arrive in time for the event with your Sister, Wife and Juju." KHAWAJA responded, "Ok buddy please make sure u in la no later then 3pm. I will pick u up at 4pm. We go to meet sister at event at 5pm :)"

hh. On or about August 22, KHAWAJA, co-hosted an event in support of Candidate 1; DEKERMENJIAN and NADER attended.  On or about August 22, NADER reported to an official from Foreign Country A's government via WhatsApp message, "I am on my way to catch up with Big Sister and Family in NY Sir."

ii. On or about August 23, KHAWAJA and NADER attended another event in support of Candidate 1.  On or about August 23, NADER reported to an official from Foreign Country A's government via WhatsApp message, "I just had dinner with my Big Sister and had a very very productive discussion with her."

jj. On or about August 24, Company A received a €1,941,939.92 wire transfer from Company B.

kk. On or about August 27, NADER sent a WhatsApp message to KHAWAJA stating, "I have conveyed to HH your commitment and promise to hold the

17

upcoming two events in coming weeks."  NADER went on to mention events in "LF" and "NY."

### KHAWAJA Arranges Another Private Event in Las Vegas

ll.  KHAWAJA arranged to host a private fundraiser for Candidate 1 in Las Vegas, Nevada in September 2016.  In order to host the event, KHAWAJA was required to contribute or raise $500,000 for Political Committee 1 and Political Committee 2.  Due to his prior contributions and the contribution limits, KHAWAJA could not contribute the full amount in his name or his wife's name.  Instead, he was able to contribute $130,000 under his name and his wife's name.  To evade contribution limits, KHAWAJA gave an additional $1 million to seven associates for them to make contributions to Political Committee 2 in their names, thereby concealing from the committee, the public, and the FEC the true source of the contributions.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contributions were from KHAWAJA's seven associates when they were not.

mm.   On or about September 8, NADER wrote in a WhatsApp message, "Don't give up any Baklava in my name till I come over and discuss it in person! You handle it for now in your resilient and creative manner !"  KHAWAJA confirmed, "Don't worry  Will not."

nn. On or about September 9, KHAWAJA wrote a $130,000 check to Political Committee 2, falsely representing that it was a contribution from him and his wife, when it was, in fact, made with monies funneled to him by NADER. This caused Political Committee 2 to unwittingly file a false report with the

FEC stating that the contribution was from KHAWAJA and his wife, when it was not.

oo. On or about September 12, KHAWAJA sent NADER a WhatsApp message stating that he was on the telephone with the campaign and the Las Vegas meeting was postponed.  KHAWAJA recorded part of his telephone call with the campaign and sent it to NADER.  NADER forwarded the recording to an official from Foreign Country A's government via WhatsApp.

pp. On or about September 27, KHAWAJA wrote a check for $1 million to Political Committee 4.  The memorandum line of the check contained Candidate 1's name.  This check falsely represented that it was a contribution from KHAWAJA, when it was, in fact, made with monies funneled to him by NADER.  This caused Political Committee 4 to unwittingly file a false report with the FEC stating that the contribution was from KHAWAJA, when it was not.

qq. On or about October 12, KHAWAJA hosted an event for Candidate 1 in Las Vegas, Nevada, which was rescheduled from its original September 14 date.  Prior to the event, representatives of Candidate 1 requested that NADER not attend, as he had not contributed anything.  KHAWAJA demanded that NADER be permitted to attend as his guest.  KHAWAJA, NADER, DEKERMENJIAN, and others invited by KHAWAJA attended this event.

rr. Following the event, on or about October 13, NADER reported to an official from Foreign Country A's government via WhatsApp message, "Had a simply

Terrific Magnificent brainstorming and discussion with the Big Lady This evening!"

ss. On or about October 16, NADER wrote in a WhatsApp message to KHAWAJA, "I am leaving early morning back to join HH  Have already told him about the Wonderful Event with Our Sister and he was thrilled and want to know all about it in person."

tt. On or about November 2, KHAWAJA wired $100,000 to Political Committee 4, falsely representing that it was a contribution from KHAWAJA, when it was, in fact, made with monies funneled to him by NADER.  This caused Political Committee 4 to unwittingly file a false report with the FEC stating that the contribution was from KHAWAJA, when it was not.

uu. Following the 2016 election, KHAWAJA caused Company A to contribute $1 million to the U.S. President-Elect's inaugural committee.  In connection with his contribution, KHAWAJA obtained tickets to the 2017 U.S. Presidential inauguration in January 2017.  He attended the inauguration with NADER and DEKERMENJIAN as his guests.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

30.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31.     From in or about June 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendants,

**AHMAD "ANDY" KHAWAJA, and
GEORGE NADER,**

20

willfully made contributions in the name of another person, and willfully permitted

KHAWAJA's name to be used to effect such contributions, to Political Committee 2, Political

Committee 4, and Political Committee 5, and willfully caused the same entities to unwittingly

accept contributions made by one person in the name of another person, which aggregated

$25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and

30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THREE
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

32.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

33.    On or about July 8, 2016, and September 9, 2016, in the District of Columbia and

elsewhere, the defendant,

### GEORGE NADER,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent

statement and representation in a matter within the jurisdiction of the executive branch of the

government of the United States, to wit, causing Political Committee 2 to unwittingly, falsely

record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA

and his wife contributed $287,000 when the contributions actually came from someone other

than KHAWAJA and his wife.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FOUR
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

34.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

35.     On or about July 8, 2016, and September 9, 2016, in the District of Columbia and elsewhere, the defendant,

**GEORGE NADER,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 2 to unwittingly, falsely record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA and his wife contributed $287,000 when the contributions actually came from someone other than KHAWAJA and his wife, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 2's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

**COUNT FIVE**
**18 U.S.C. §§ 1001(a)(2) and 2**
**(False Statements and Aiding and Abetting)**

36.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

37.     On or about July 8, 2016, in the District of Columbia and elsewhere, the defendants,

**AHMAD "ANDY" KHAWAJA, and**
**GEORGE NADER,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 1 to unwittingly, falsely record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA

and his wife contributed $400,800 when the contributions actually came from someone other than KHAWAJA and his wife.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT SIX
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

38.　　Paragraphs 1 through 29 are realleged and incorporated herein by reference.

39.　　On or about July 8, 2016, in the District of Columbia and elsewhere, the defendants,

**AHMAD "ANDY" KHAWAJA, and
GEORGE NADER,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 1 to unwittingly, falsely record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA and his wife contributed $400,800 when the contributions actually came from someone other than KHAWAJA and his wife, which falsification the defendants well knew and contemplated was related to the proper administration of Political Committee 1's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT SEVEN
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

40.　　Paragraphs 1 through 29 are realleged and incorporated herein by reference.

41.     On or about July 18, 2016, in the District of Columbia and elsewhere, the

defendants,

**AHMAD "ANDY" KHAWAJA, and**
**GEORGE NADER,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent

statement and representation in a matter within the jurisdiction of the executive branch of the

government of the United States, to wit, causing Political Committee 3 to unwittingly, falsely

record in a report to the Federal Election Commission dated September 26, 2016, that Company

A contributed $550,000 when the contribution actually came from someone other than Company

A.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT EIGHT**
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

42.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

43.     On or about July 18, 2016, in the District of Columbia and elsewhere, the

defendants,

**AHMAD "ANDY" KHAWAJA, and**
**GEORGE NADER,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the

investigation and proper administration of matters within the jurisdiction of departments and

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 3 to unwittingly,

falsely record in a report to the Federal Election Commission dated September 26, 2016, that

Company A contributed $550,000 when the contribution actually came from someone other than

Company A, which falsification the defendants well knew and contemplated was related to the

proper administration of Political Committee 3's required disclosures under the Election Act by

the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT NINE
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

44.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

45.    On or about September 30, 2016, in the District of Columbia and elsewhere, the

defendants,

### AHMAD "ANDY" KHAWAJA, and
### GEORGE NADER,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent

statement and representation in a matter within the jurisdiction of the executive branch of the

government of the United States, to wit, causing Political Committee 4 to unwittingly, falsely

record in a report to the Federal Election Commission dated October 20, 2016, that KHAWAJA

contributed $1,000,000 when the contribution actually came from someone other than

KHAWAJA.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT TEN
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

46.    Paragraphs 1 through 29 are realleged and incorporated herein by reference.

47.    On or about September 30, 2016, in the District of Columbia and elsewhere, the

defendants,

### AHMAD "ANDY" KHAWAJA, and

**GEORGE NADER,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the

investigation and proper administration of matters within the jurisdiction of departments and

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 4 to unwittingly,

falsely record in a report to the Federal Election Commission dated October 20, 2016, that

KHAWAJA contributed $1,000,000 when the contribution actually came from someone other

than KHAWAJA, which falsification the defendants well knew and contemplated was related to

the proper administration of Political Committee 4's required disclosures under the Election Act

by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

<u>**COUNT ELEVEN**</u>
**18 U.S.C. §§ 1001(a)(2) and 2**
**(False Statements and Aiding and Abetting)**

48.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

49.     On or about November 2, 2016, in the District of Columbia and elsewhere, the

defendants,

**AHMAD "ANDY" KHAWAJA, and**
**GEORGE NADER,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent

statement and representation in a matter within the jurisdiction of the executive branch of the

government of the United States, to wit, causing Political Committee 4 to unwittingly, falsely

record in a report to the Federal Election Commission dated December 8, 2016, that KHAWAJA

contributed $100,000 when the contribution actually came from someone other than

KHAWAJA.

26

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT TWELVE
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

50.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

51.     On or about November 2, 2016, in the District of Columbia and elsewhere, the

defendants,

### AHMAD "ANDY" KHAWAJA, and
### GEORGE NADER,

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the

investigation and proper administration of matters within the jurisdiction of departments and

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 4 to unwittingly,

falsely record in a report to the Federal Election Commission dated December 8, 2016, that

KHAWAJA contributed $100,000 when the contribution actually came from someone other than

KHAWAJA, which falsification the defendants well knew and contemplated was related to the

proper administration of Political Committee 4's required disclosures under the Election Act by

the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTEEN
### 18 U.S.C. § 371
### (Conspiracy to Make Conduit Contributions, Make Excessive Contributions, Cause False
### Statements, and Cause False Entries in Records)

52.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

53.     From in or about March 2016 through in or about June 2018, in the District of

Columbia and elsewhere, the defendants,

**AHMAD "ANDY" KHAWAJA,**
**ROY BOULOS,**
**RUDY DEKERMENJIAN,**
**MOHAMMAD "MOE" DIAB,**
**RANI EL-SAADI,**
**STEVAN HILL, and**
**THAYNE WHIPPLE,**

knowingly conspired and agreed together and with each other, and with other persons both

known and unknown to the Grand Jury, to commit offenses against the United States, that is:

    a.  willfully making contributions in the name of another person and permitting

        one's name to be used to effect such contributions, and causing another to

        accept contributions made by one person in the name of another person, which

        contributions aggregated $25,000 and more in calendar years 2016, 2017, and

        2018, in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30122, and 18

        U.S.C. § 2;

    b.  willfully causing a political committee to accept contributions in excess of the

        limits of the Election Act, which aggregated $25,000 and more in calendar

        years 2016, 2017, and 2018, in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i)

        and 30116(f), and 18 U.S.C. § 2;

    c.  willfully causing the submission of material false, fictitious, and fraudulent

        statements and representations in a matter within the jurisdiction of the

        executive branch of the government of the United States, in violation of 18

        U.S.C. §§ 1001(a)(2) and 2; and

    d.  with the intent to impede, obstruct, and influence, and in relation to and

        contemplation of, the investigation and proper administration of matters

        within the jurisdiction of departments and agencies of the United States,

knowingly causing the concealment, covering up, falsifying, and making of false entries in records, documents, and tangible objects, in violation of 18 U.S.C. §§ 1519 and 2.

## PURPOSES OF THE CONSPIRACY

54.     It was a purpose of the conspiracy to facilitate unlawful campaign contributions from KHAWAJA through the other conspirators to various political committees in order for KHAWAJA and others to gain access to and host events featuring prominent politicians, in an effort to gain influence with those politicians and others.

55.     It was a purpose of the conspiracy to cause Political Committee 2, Political Committee 6, Political Committee 7, and Political Committee 8 to unwittingly file false campaign finance reports concealing these unlawful campaign contributions from the FEC and the public by falsely stating that the contributions were made by various co-conspirators other than KHAWAJA when in reality they were funded by KHAWAJA.

56.     It was a purpose of the conspiracy to conceal the co-conspirators' unlawful activity.

## MANNER AND MEANS

57.     The manner and means of the conspiracy included, but were not limited to, the following:

a.   KHAWAJA funneled more than $1.8 million to the conspirators to contribute to political committees under their names as he directed;

b.   The conspirators caused the monies funneled to them by KHAWAJA to be contributed to various political committees under their own names;

29

    c.  The conspirators caused the political committees to unwittingly submit reports to the FEC falsely stating that the contributions were made by the other conspirators when they were actually made by KHAWAJA; and

    d.  The conspirators attempted to further conceal the contributions by falsely claiming that the payments from KHAWAJA were legitimate, when in actuality, the payments were to illegally fund KHAWAJA's political contributions in the names of the other conspirators.

**OVERT ACTS**

58.    In furtherance of the conspiracy, and to accomplish its purpose, the defendants,

**AHMAD "ANDY" KHAWAJA,**
**ROY BOULOS,**
**RUDY DEKERMENJIAN,**
**MOHAMMAD "MOE" DIAB,**
**RANI EL-SAADI,**
**STEVAN HILL, and**
**THAYNE WHIPPLE,**

and others known and unknown to the Grand Jury, committed, and caused to be committed, in the District of Columbia, and elsewhere, the following overt acts:

### KHAWAJA Gives His Co-Conspirators Money to Contribute to His Private Fundraiser

    a.  KHAWAJA arranged to host a private fundraiser for Candidate 1 in Las Vegas, Nevada in September 2016. In order to host the event, KHAWAJA was required to contribute or raise $500,000 for Political Committee 1 and Political Committee 2. Due to his prior contributions and the contribution limits, KHAWAJA was not able to contribute the full amount in his name or his wife's name. As a result, KHAWAJA provided the other co-conspirators

with money to contribute to Political Committee 1 and Political Committee 2 in their names to meet the fundraising requirement for the event.

b.  On or about August 1, 2016, KHAWAJA wrote a $196,000 check to DIAB. On or about August 2, 2016, DIAB wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from DIAB, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not.

c.  On or about August 6, 2016, KHAWAJA wrote a $30,000 check to HILL, and on or about August 18, 2016, KHAWAJA wrote a $75,000 check to HILL. On or about August 28, 2016, HILL wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from HILL, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from HILL, when it was not.

d.  On or about August 15, 2016, KHAWAJA caused Company A to send a $100,000 check, signed by DIAB, to Co-Conspirator A.  On or about August

18, 2016, Co-Conspirator A wrote a $133,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA and another political event attended by Co-Conspirator A and KHAWAJA. The check falsely represented that it was a contribution from Co-Conspirator A, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from Co-Conspirator A, when it was not. On or about August 23, 2016, KHAWAJA wrote a $10,000 check to Co-Conspirator A.

e. On or about August 17, 2016, KHAWAJA wrote a $44,000 check to WHIPPLE. On or about September 8, 2016, DIAB wrote a $50,000 check to WHIPPLE at KHAWAJA's direction. On or about September 8, 2016, WHIPPLE wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA. The check falsely represented that it was a contribution from WHIPPLE, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from WHIPPLE, when it was not.

f. On or about August 25, 2016, KHAWAJA caused Company A to wire transfer $294,965 to BOULOS. On or about September 8, 2016, BOULOS

wrote a $300,000 check for contribution to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from BOULOS, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from BOULOS, when it was not.

g.  On or about September 9, 2016, KHAWAJA caused Company A to wire transfer $148,965 to EL-SAADI's company.  On or about the same date, EL-SAADI transferred $150,000 from his company's account to his personal account, and wrote a check for $150,000 to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from El-SAADI, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from EL-SAADI, when it was not.

h.  On or about September 9, 2016, KHAWAJA wrote a $185,000 check to DIAB.  On or about the same date, DIAB wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from DIAB, when it was,

in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not.

i.   On or about September 9, 2016, KHAWAJA wrote a $130,000 check to Political Committee 2 in connection with the event he was hosting.  The memorandum line of the check stated, "Vegas."

j.   On or about October 2, 2016, KHAWAJA wrote a $165,000 check to DIAB. On or about October 7, 2016, DIAB wrote a $50,000 check to DEKERMENJIAN at KHAWAJA's direction (and had previously written a $50,000 check to WHIPPLE at KHAWAJA's direction).  On or about October 13, 2016, DEKERMENJIAN wrote a $50,000 check for contribution to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from DEKERMENJIAN, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DEKERMENJIAN, when it was not.

k.   On or about October 12, 2016, KHAWAJA hosted an event for Candidate 1 in Las Vegas, Nevada, which was rescheduled from its original September 14 date.  BOULOS, DEKERMENJIAN, DIAB, El-SAADI, HILL, NADER, and

34

WHIPPLE attended the event along with KHAWAJA.  Co-Conspirator A did not attend the event.

**KHAWAJA Gives HILL, WHIPPLE, DIAB, and BOULOS Money to Contribute**

l.   In or about March 2017, KHAWAJA caused the contribution of $250,000 to Political Committee 6 on behalf of himself and his wife.

m.  On or about June 16, 2017, HILL wrote a $50,000 check to Political Committee 6, which posted on June 21, 2017.  The check falsely represented that it was a contribution from HILL, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 6 to unwittingly file a false report with the FEC stating that the contribution was from HILL, when it was not.  On or about June 19, 2017, KHAWAJA wrote a $60,000 check to HILL.

n.   On or about September 14, 2017, WHIPPLE wrote a $100,000 check to Political Committee 6.  The check falsely represented that it was a contribution from WHIPPLE and his wife, when it was, in fact, made with monies to be funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 6 to unwittingly file a false report with the FEC stating that the contribution was from WHIPPLE and his wife, when it was not.  On or about October 13, 2017, KHAWAJA caused a company he controlled to write a $100,000 check to WHIPPLE.

o.  On or about November 29, 2017, KHAWAJA caused a company he
controlled to write a $214,000 check to a company controlled by DIAB.  On
or about the same date, DIAB wrote a $100,000 check to Political Committee
6.  The check falsely represented that it was a contribution from DIAB, when
it was, in fact, made with monies funneled to him by KHAWAJA for the
purpose of making the contribution and to avoid and exceed the personal
contribution limits set by federal law.  This caused Political Committee 6 to
unwittingly file a false report with the FEC stating that the contribution was
from DIAB, when it was not.

p.  On or about March 5, 2018, KHAWAJA caused Company A to wire transfer
$275,000 to BOULOS.  On or about the same date, BOULOS wrote a
$250,000 check to Political Committee 6.  The check falsely represented that
it was a contribution from BOULOS, when it was, in fact, made with monies
funneled to him by KHAWAJA for the purpose of making the contribution.
This caused Political Committee 6 to unwittingly file a false report with the
FEC stating that the contribution was from BOULOS, when it was not.

### KHAWAJA Gives HILL and DEKERMENJIAN Money to Contribute for His Private Fundraising Dinner

q.  On or about January 19, 2018, KHAWAJA wrote a $50,000 check to HILL.
On or about January 28, 2018, HILL wrote a $50,000 check to Political
Committee 7 in connection with an event hosted by KHAWAJA at his home
for Elected Official 1 on or about March 11, 2018.  The check falsely
represented that it was a contribution from HILL, when it was, in fact, made
with monies funneled to him by KHAWAJA for the purpose of making the

contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 7 to unwittingly file a false report with the FEC stating that the contribution was from HILL, when it was not.

r.  On or about January 19, 2018, KHAWAJA wrote a $45,000 check to DEKERMEJIAN.  On or about January 30, 2018, DEKERMENJIAN wrote a $50,000 check to Political Committee 7 in connection with an event hosted by KHAWAJA at his home for Elected Official 1 on or about March 11, 2018. The check falsely represented that it was a contribution from DEKERMENJIAN, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 7 to unwittingly file a false report with the FEC stating that the contribution was from DEKERMENJIAN, when it was not.

s.  On or about March 10, 2018, KHAWAJA wrote a $237,000 check to Political Committee 7 in connection with an event hosted by KHAWAJA at his home for Elected Official 1 on or about March 11, 2018.

**KHAWAJA Gives DIAB Money to Contribute for Another Political Event**

t.  On or about June 20, 2018, KHAWAJA caused a company he controlled to write a $225,000 check to a company controlled by DIAB.  On or about June 25, 2018, DIAB wrote a $225,000 check to Political Committee 8 in connection with an event featuring Elected Official 2 on or about June 18, 2018.  The check falsely represented that it was a contribution from DIAB,

when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution. This caused Political Committee 8 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not. As a result of the contribution, KHAWAJA was invited to the aforementioned event. Although he did not attend the event itself, he did attend a private meeting with Elected Official 2 on the very same date.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOURTEEN
### 52 U.S.C. §§ 30116(f) and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Causing Excessive Contributions and Aiding and Abetting)

59.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

60.     From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

willfully caused Political Committee 2 and Political Committee 5 to unwittingly accept contributions in excess of the limits of the Election Act, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30116(f) and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT FIFTEEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

61.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

62.     From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**ROY BOULOS,**

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT SIXTEEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

63.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

64.     From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**RUDY DEKERMENJIAN,**

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept

contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT SEVENTEEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

65.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

66.    From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

### MOHAMMAD "MOE" DIAB,

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT EIGHTEEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

67.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

68.    From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**RANI EL-SAADI,**

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT NINETEEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

69.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

70.     From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**STEVAN HILL,**

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

**COUNT TWENTY**
**52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2**
**(Making Conduit Contributions and Aiding and Abetting)**

71.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

72.     From in or about August 2016 through in or about November 2016, in the District of Columbia and elsewhere, the defendant,

**THAYNE WHIPPLE,**

willfully permitted his name to be used to effect contributions of another to Political Committee 2 and Political Committee 5, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

**COUNT TWENTY-ONE**
**18 U.S.C. §§ 1001(a)(2) and 2**
**(False Statements and Aiding and Abetting)**

73.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

74.     On or about July 8, 2016, August 2, 2016, August 23, 2016, and September 9, 2016, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 2 to unwittingly, falsely

record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA, his wife, DIAB, EL-SAADI, Co-Conspirator A, HILL, and WHIPPLE contributed $970,000 when the contributions actually came from someone other than the reported contributors.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT TWENTY-TWO
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

75. Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

76. On or about July 8, 2016, August 2, 2016, August 23, 2016, and September 9, 2016, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 2 to unwittingly, falsely record in a report to the Federal Election Commission dated October 15, 2016, that KHAWAJA, his wife, DIAB, EL-SAADI, Co-Conspirator A, HILL, and WHIPPLE contributed $970,000 when the contributions actually came from someone other than the reported contributors, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 2's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

**COUNT TWENTY-THREE**
**18 U.S.C. §§ 1001(a)(2) and 2**
**(False Statements and Aiding and Abetting)**

77.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

78.     On or about October 5, 2016, and October 13, 2016, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 2 to unwittingly, falsely record in a report to the Federal Election Commission dated October 27, 2016, that BOULOS and DEKERMENJIAN contributed $350,000 when the contributions actually came from someone other than BOULOS and DEKERMENJIAN.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT TWENTY-FOUR**
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

79.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

80.     On or about October 5, 2016, and October 13, 2016, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and

44

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 2 to unwittingly,

falsely record in a report to the Federal Election Commission dated October 27, 2016, that

BOULOS and DEKERMENJIAN contributed $350,000 when the contributions actually came

from someone other than BOULOS and DEKERMENJIAN, which falsification the defendant

well knew and contemplated was related to the proper administration of Political Committee 2's

required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-FIVE
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

81.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

82.     From in or about June 2017 through in or about November 2017, in the District of

Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

willfully made contributions in the name of another person to Political Committee 6, and

willfully caused the same entity to unwittingly accept contributions made by one person in the

name of another person, which aggregated $25,000 and more in calendar year 2017.

All in violation of Title 52, United States Code, Sections 30122 and

30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT TWENTY-SIX
### 52 U.S.C. §§ 30116(f) and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Causing Excessive Contributions and Aiding and Abetting)

83.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

84.     From in or about June 2017 through in or about November 2017, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

willfully caused Political Committee 6 to unwittingly accept contributions in excess of the limits of the Election Act, which aggregated $25,000 and more in calendar year 2017.

All in violation of Title 52, United States Code, Sections 30116(f) and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT TWENTY-SEVEN
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

85.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

86.     In or about June 2017, in the District of Columbia and elsewhere, the defendant,

### STEVAN HILL,

willfully permitted his name to be used to effect contributions of another to Political Committee 6, and willfully caused the same entity to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2017.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

**COUNT TWENTY-EIGHT**
**18 U.S.C. §§ 1001(a)(2) and 2**
**(False Statements and Aiding and Abetting)**

87.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

88.     On or about June 21, 2017, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated July 20, 2017, that HILL contributed $50,000 when the contribution actually came from someone other than HILL.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT TWENTY-NINE**
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

89.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

90.     On or about June 21, 2017, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

47

in a record, document, and tangible object, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated July 20, 2017, that HILL contributed $50,000 when the contribution actually came from someone other than HILL, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 6's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

91.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

92.     In or about September 2017, in the District of Columbia and elsewhere, the defendant,

**THAYNE WHIPPLE,**

willfully permitted his name to be used to effect contributions of another to Political Committee 6, and willfully caused the same entity to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2017.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THIRTY-ONE
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

93.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

94.     On or about September 18, 2017, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated October 20, 2017, that WHIPPLE and his wife contributed $100,000 when the contributions actually came from someone other than WHIPPLE and his wife.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT THIRTY-TWO
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

95.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

96.     On or about September 18, 2017, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated October 20, 2017, that WHIPPLE and his wife contributed $100,000 when the contributions actually came from

49

someone other than WHIPPLE and his wife, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 6's required disclosures under the Election Act by the Federal Election Commission.

      All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-THREE
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

      97.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

      98.    In or about November 2017, in the District of Columbia and elsewhere, the defendant,

### MOHAMMAD "MOE" DIAB,

willfully permitted his name to be used to effect contributions of another to Political Committee 6, and willfully caused the same entity to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2017.

      All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THIRTY-FOUR
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

      99.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

      100.    On or about November 30, 2017, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated December 20, 2017, that DIAB contributed $100,000 when the contribution actually came from someone other than DIAB.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT THIRTY-FIVE
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

101.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

102.    On or about November 30, 2017, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 6 to unwittingly, falsely record in a report to the Federal Election Commission dated December 20, 2017, that DIAB contributed $100,000 when the contribution actually came from someone other than DIAB, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 6's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-SIX
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

103.　Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

104.　From in or about January 2018 through in or about March 2018, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

willfully made contributions in the name of another person to Political Committee 6 and Political Committee 7, and willfully caused the same entities to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2018.

　　　　All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THIRTY-SEVEN
### 52 U.S.C. §§ 30116(f) and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Causing Excessive Contributions and Aiding and Abetting)

105.　Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

106.　From in or about January 2018 through in or about March 2018, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

willfully caused Political Committee 7 to unwittingly accept contributions in excess of the limits of the Election Act, which aggregated $25,000 and more in calendar year 2018.

All in violation of Title 52, United States Code, Sections 30116(f) and

30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THIRTY-EIGHT
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

107.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

108.    In or about March 2018, in the District of Columbia and elsewhere, the defendant,

### ROY BOULOS,

willfully permitted his name to be used to effect contributions of another to Political Committee

6, and willfully caused the same entity to unwittingly accept contributions made by one person in

the name of another person, which aggregated $25,000 and more in calendar year 2018.

All in violation of Title 52, United States Code, Sections 30122 and

30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT THIRTY-NINE
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

109.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

110.    On or about March 15, 2018, in the District of Columbia and elsewhere, the

defendant,

### AHMAD "ANDY" KHAWAJA,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent

statement and representation in a matter within the jurisdiction of the executive branch of the

government of the United States, to wit, causing Political Committee 6 to unwittingly, falsely

record in a report to the Federal Election Commission dated April 20, 2018, that BOULOS

contributed $250,000 when the contribution actually came from someone other than BOULOS.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT FORTY
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

111.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

112.    On or about March 15, 2018, in the District of Columbia and elsewhere, the

defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the

investigation and proper administration of matters within the jurisdiction of departments and

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 6 to unwittingly,

falsely record in a report to the Federal Election Commission dated April 20, 2018, that

BOULOS contributed $250,000 when the contribution actually came from someone other than

BOULOS, which falsification the defendant well knew and contemplated was related to the

proper administration of Political Committee 6's required disclosures under the Election Act by

the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FORTY-ONE
## 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

113.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

114.    From in or about January 2018 through in or about March 2018, in the District of Columbia and elsewhere, the defendant,

**STEVAN HILL,**

willfully permitted his name to be used to effect contributions of another to Political Committee 7, and willfully caused the same entity to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2018.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT FORTY-TWO
## 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

115.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

116.    On or about March 14, 2018, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 7 to unwittingly, falsely

record in a report to the Federal Election Commission dated April 20, 2018, that HILL

contributed $50,000 when the contribution actually came from someone other than HILL.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT FORTY-THREE
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

117.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

118.    On or about March 14, 2018, in the District of Columbia and elsewhere, the

defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the

investigation and proper administration of matters within the jurisdiction of departments and

agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

in a record, document, and tangible object, to wit, causing Political Committee 7 to unwittingly,

falsely record in a report to the Federal Election Commission dated April 20, 2018, that HILL

contributed $50,000 when the contribution actually came from someone other than HILL, which

falsification the defendant well knew and contemplated was related to the proper administration

of Political Committee 7's required disclosures under the Election Act by the Federal Election

Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FORTY-FOUR
### 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Making Conduit Contributions and Aiding and Abetting)

119.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

120.     From in or about January 2018 through in or about March 2018, in the District of Columbia and elsewhere, the defendant,

### RUDY DEKERMENJIAN,

willfully permitted his name to be used to effect contributions of another to Political Committee 7, and willfully caused the same entity to unwittingly accept contributions made by one person in the name of another person, which aggregated $25,000 and more in calendar year 2018.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT FORTY-FIVE
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

121.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

122.     On or about March 14, 2018, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 7 to unwittingly, falsely record in a report to the Federal Election Commission dated April 20, 2018, that

DEKERMENJIAN contributed $50,000 when the contribution actually came from someone other than DEKERMENJIAN.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT FORTY-SIX
**18 U.S.C. §§ 1519 and 2**
**(Causing False Records and Aiding and Abetting)**

123.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

124.    On or about March 14, 2018, in the District of Columbia and elsewhere, the defendant,

**AHMAD "ANDY" KHAWAJA,**

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee 7 to unwittingly, falsely record in a report to the Federal Election Commission dated April 20, 2018, that DEKERMENJIAN contributed $50,000 when the contribution actually came from someone other than DEKERMENJIAN, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 7's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FORTY-SEVEN
### 18 U.S.C. §§ 1001(a)(2) and 2
### (False Statements and Aiding and Abetting)

125.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

126.     On or about June 26, 2018, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

knowingly and willfully, caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government of the United States, to wit, causing Political Committee 8 to unwittingly, falsely record in a report to the Federal Election Commission dated July 13, 2018, that DIAB contributed $225,000 when the contribution actually came from someone other than DIAB.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FORTY-EIGHT
### 18 U.S.C. §§ 1519 and 2
### (Causing False Records and Aiding and Abetting)

127.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

128.     On or about June 26, 2018, in the District of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry

59

in a record, document, and tangible object, to wit, causing Political Committee 8 to unwittingly, falsely record in a report to the Federal Election Commission dated July 13, 2018, that DIAB contributed $225,000 when the contribution actually came from someone other than DIAB, which falsification the defendant well knew and contemplated was related to the proper administration of Political Committee 8's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

### COUNT FORTY-NINE
**18 U.S.C. § 1503**
**(Obstruction)**

129.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

130.     On or about March 18, 2019, in the District of Columbia and elsewhere, the defendant,

**ROY BOULOS,**

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due administration of justice, to wit, a federal grand jury investigation pending in the District of Columbia.  With knowledge that his statements would be transmitted to the grand jury in the District of Columbia, BOULOS falsely told FBI Agents that he requested money from KHAWAJA so that he could make a contribution to Political Committee 2; and that KHAWAJA never asked or directed him to make the contribution.

All in violation of Title 18, United States Code, Section 1503.

## COUNT FIFTY
### 18 U.S.C. § 1503
### (Obstruction)

131.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

132.     On or about March 20, 2019, in the District of Columbia and elsewhere, the defendant,

### MOHAMMAD "MOE" DIAB,

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due administration of justice, to wit, a federal grand jury investigation pending in the District of Columbia.  With knowledge that his statements would be transmitted to the grand jury in the District of Columbia, DIAB falsely told FBI Agents that KHAWAJA did not give him money in order to make political contributions; that DIAB's political contributions were all made with his own money; and that all of the checks DIAB received from KHAWAJA in 2016 were for DIAB's salary and bonuses from work at Company A, not reimbursement for political contributions.

All in violation of Title 18, United States Code, Section 1503.

### COUNT FIFTY-ONE
### 18 U.S.C. § 1503
### (Obstruction)

133.     Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

134.     On or about March 20, 2019, in the District of Columbia and elsewhere, the defendant,

### STEVAN HILL,

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due administration of justice, to wit, a federal grand jury investigation pending in the District of Columbia.  With knowledge that his statements would be transmitted to the grand jury in the District of Columbia, HILL falsely told FBI Agents that nobody gave him the money he contributed to the Political Committee 2 in 2016; that the money he received from KHAWAJA in 2016 had nothing to do with the $100,000 HILL contributed to Political Committee 2; and that any checks he received from KHAWAJA were investments in HILL's business, bonuses, or reimbursement for invoices HILL had to pay in connection with a joint venture he had with KHAWAJA.

All in violation of Title 18, United States Code, Section 1503.

### COUNT FIFTY-TWO
**18 U.S.C. § 1503**
**(Obstruction)**

135.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein by reference.

136.    On or about March 22, 2019, in the District of Columbia and elsewhere, the defendant,

**THAYNE WHIPPLE,**

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due administration of justice, to wit, a federal grand jury investigation pending in the District of Columbia.  With knowledge that his statements would be transmitted to the grand jury in the District of Columbia, WHIPPLE falsely told FBI Agents that WHIPPLE's political contributions were made with his own money; that any checks he received from KHAWAJA in

2016 were in connection with work WHIPPLE performed for Company A; and that WHIPPLE

was not reimbursed for the political contribution he made to Political Committee 2.

All in violation of Title 18, United States Code, Section 1503.

## COUNT FIFTY-THREE
### 18 U.S.C. § 1503
### (Obstruction)

137.    Paragraphs 1 through 29 and 52 through 58 are realleged and incorporated herein

by reference.

138.    Between on or about June 26, 2019, and on or about July 18, 2019, in the District

of Columbia and elsewhere, the defendant,

### AHMAD "ANDY" KHAWAJA,

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and

impede, the due administration of justice, to wit, a federal grand jury investigation pending in the

District of Columbia.  With knowledge that Individual 2 was testifying before the federal grand

jury in the District of Columbia regarding matters contained in this Indictment, KHAWAJA

provided Individual 2 with a false factual narrative, including that Company A had a user

guide—that predated the "NextGen User Guide"—for its legacy software; that the NextGen User

Guide was constantly being revised; that the NextGen User Guide was a blueprint to Company

A's software, which would enable a developer to steal Company A's software; and that NADER

had stolen Company A's software.  When KHAWAJA provided these false facts to Individual 2,

KHAWAJA knew then and there that the statements were false. KHAWAJA also directed

Individual 2 to be careful what he said.

All in violation of Title 18, United States Code, Section 1503.

A TRUE BILL.

Dated: _____            _____

                                   GRAND JURY FOREPERSON


                                   COREY R. AMUNDSON
                                   Chief, Public Integrity Section

                    By:            _____
                                   John D. Keller
                                   Deputy Chief
                                   James C. Mann
                                   Trial Attorney
                                   Public Integrity Section
                                   Criminal Division
                                   U.S. Department of Justice